**No. 24-1267**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

ST. MARY CATHOLIC PARISH IN LITTLETON; ST. BERNADETTE CATHOLIC PARISH IN LAKEWOOD; DANIEL SHELEY; LISA SHELEY; THE ARCHDIOCESE OF DENVER,

*Plaintiffs-Appellants*,

v.

LISA ROY, in her official capacity as Executive Director of the Colorado Department of Early Childhood; DAWN ODEAN, in her official capacity as Director of Colorado's Universal Preschool Program,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Colorado
Case No. 1:23-cv-2079-JLK — Hon. John L. Kane

**BRIEF IN SUPPORT OF APPELLEES AND AFFIRMANCE OF *AMICI CURIAE* AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE; AMERICAN CIVIL LIBERTIES UNION; ACLU OF COLORADO; CENTRAL CONFERENCE OF AMERICANS RABBIS; INTERFAITH ALLIANCE; INTERFAITH ALLIANCE OF COLORADO; KESHET; LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.; THE SIKH COALITION; UNION FOR REFORM JUDAISM; AND WOMEN OF REFORM JUDAISM**

Timothy R. Macdonald
Sara R. Neel
Anna I. Kurtz
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION OF COLORADO

Daniel Mach
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION

Karen L. Loewy
Kenneth D. Upton
LAMBDA LEGAL DEFENSE AND
  EDUCATION FUND, INC.

Alex J. Luchenitser
Scott Lowder (appearing under
  10th Cir. R. 46.7)
AMERICANS UNITED FOR
  SEPARATION OF CHURCH AND
  STATE
1310 L Street NW, Suite 200
Washington, DC 20005
(202) 466-7306
*luchenitser@au.org*
*lowder@au.org*

*Counsel for* Amici Curiae; full contact information is on signature page.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTERESTS OF THE *AMICI CURIAE*.............................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................3

ARGUMENT .........................................................................................5

I.    Conditioning a public benefit on compliance with a religion-neutral law does not violate the Free Exercise Clause ........................5

II.    Exemptions from prohibitions other than the challenged ones do not trigger strict scrutiny under the Free Exercise Clause ........................................................................................ 10

    A.    Plaintiffs wrongly rely on alleged exemptions to prohibitions other than the ones against sexual-orientation and gender-identity discrimination........................ 10

    B.    Plaintiffs' reliance on the Preschool Program's "congregation preference" is doubly misguided.......................... 14

III.    Even if strict scrutiny applies, the equal-opportunity requirement satisfies it ................................................ 17

    A.    The equal-opportunity requirement serves compelling governmental interests ........................................... 17

    B.    The equal-opportunity requirement is narrowly tailored.......... 19

CONCLUSION....................................................................................... 22

CERTIFICATIONS OF COUNSEL............................................................ 24

i

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. ACLU,*
    542 U.S. 656 (2004) ................................................................. 20

*Axson-Flynn v. Johnson,*
    356 F.3d 1277 (10th Cir. 2004) ............................................... 8

*Brown v. Bd. of Educ.,*
    347 U.S. 483 (1954) ................................................................. 19

*Burton v. Wilmington Parking Auth.,*
    365 U.S. 715 (1961) ............................................................. 9, 18

*Carson ex rel. O.C. v. Makin,*
    596 U.S. 767 (2022) ............................................................. 6, 7

*Cath. Charities of Diocese of Albany v. Serio,*
    859 N.E.2d 459 (N.Y. 2006) .................................................. 17

*Cath. Charities of Sacramento, Inc. v. Superior Ct.,*
    85 P.3d 67 (Cal. 2004) ........................................................... 15

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ............................................................. 5, 10

*EEOC v. Fremont Christian Sch.,*
    781 F.2d 1362 (9th Cir. 1986) ............................................... 16

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.,*
    884 F.3d 560 (6th Cir. 2018), *aff'd sub nom.*
    *Bostock v. Clayton County,* 590 U.S. 644 (2020) ............................. 19–20

*Emilee Carpenter, LLC v. James,*
    107 F.4th 92 (2d Cir. 2024) ................................................... 11

*Employment Division v. Smith,*
    494 U.S. 872 (1990) ....................................................... 5–8, 10, 13

*Espinoza v. Mont. Dep't of Revenue,*
    591 U.S. 464 (2020) ................................................................. 6

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*
    *Bd. of Educ.,* 82 F.4th 664 (9th Cir. 2023) (en banc) .......................... 14

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) ............................................................... 5, 8, 17, 18

*Gilmore v. City of Montgomery,*
    417 U.S. 556 (1974) ...................................................................... 9, 18

*Grace United Methodist Church v. City of Cheyenne,*
    451 F.3d 643 (10th Cir. 2006) ............................................................ 13

*Heart of Atlanta Motel, Inc. v. United States,*
    379 U.S. 241 (1964) ......................................................................... 21

*Hernandez v. Comm'r,*
    490 U.S. 680 (1989) ......................................................................... 12

*Holt v. Hobbs,*
    574 U.S. 352 (2015) ........................................................................... 8

*Kane v. De Blasio,*
    19 F.4th 152 (2d Cir. 2021) .............................................................. 13

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ......................................................................... 17

*Kim v. Bd. of Educ.,*
    93 F.4th 733 (4th Cir. 2024) ............................................................... 7

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988) ........................................................................... 6

*Masterpiece Cakeshop v. Colo. C.R. Comm'n,*
    584 U.S. 617 (2018) ..................................................................... 17–18

*Norwood v. Harrison,*
    413 U.S. 455 (1973) ...................................................................... 9, 18

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    591 U.S. 732 (2020) ........................................................................... 5

*PeTA, People for the Ethical Treatment of Animals v.*
    *Rasmussen,* 298 F.3d 1198 (10th Cir. 2002) ......................................... 18

*Petrella v. Brownback,*
    787 F.3d 1242 (10th Cir. 2015) .......................................................... 19

*Plyler v. Doe,*
    457 U.S. 202 (1982) ......................................................................... 19

iii

*Rayburn v. Gen. Conf. of Seventh-Day Adventists,*
  772 F.2d 1164 (4th Cir. 1985) .................................................................. 16

*Reynolds v. United States,*
  98 U.S. 145 (1878) ...................................................................................... 5

*Roberts v. U.S. Jaycees,*
  468 U.S. 609 (1984) ...................................................................... 17, 19, 22

*Roman Cath. Diocese of Albany v. Vullo,*
  42 N.Y.3d 213, 2024 WL 2278222 (N.Y. 2024),
  *petition for cert. docketed,* No. 24-319 (Sept. 20, 2024) .......................... 15

*Rothner v. City of Chicago,*
  929 F.2d 297 (7th Cir. 1991) .................................................................. 19

*Sherbert v. Verner,*
  374 U.S. 398 (1963) .................................................................................. 7, 8

*Swanson v. Guthrie Indep. Sch. Dist. No. I-L,*
  135 F.3d 694 (10th Cir. 1998) .................................................................. 6

*Tandon v. Newsom,*
  593 U.S. 61 (2021) (per curiam) ............................................... 10, 14, 15

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  582 U.S. 449 (2017) .................................................................................. 6

*United States v. Maloid,*
  71 F.4th 795 (10th Cir. 2023),
  *cert. denied,* 144 S. Ct. 1035 (2024) ...................................................... 8

*United States v. Quaintance,*
  608 F.3d 717 (10th Cir. 2010) .............................................................. 11

**Statutes, Rules, and Regulations**

42 U.S.C. § 2000e-1(a) .............................................................................. 16

42 U.S.C. § 3607(a) .................................................................................... 16

42 U.S.C. § 12113(d) .................................................................................. 16

Colo. Rev. Stat. § 26.5-4-203(12) .............................................................. 3

Colo. Rev. Stat. § 26.5-4-205(2)(b) ............................................................ 3

**Other Authorities**

Beth Mueller Stewart, *Catholic Parents Ask Denver's Archbishop Aquila to Drop Anti-LGBTQ+ Lawsuit*, New Ways Ministry (May 21, 2024), https://bit.ly/40iHKrg .......................... 22

Daniel 1:12........................................................................................... 9

Joseph William Singer, *Subprime: Why a Free and Democratic Society Needs Law*, 47 Harv. C.R.-C.L. L. Rev. 141 (2012).................... 20

S. Rep. No. 88-872 ................................................................................ 21

**INTERESTS OF THE *AMICI CURIAE*[1]**

*Amici* are religious and civil-rights organizations that are united in respecting the important but distinct roles of religion and government in our nation. *Amici* represent and respect the diversity of faith and belief while sharing a commitment to ensuring that LGBTQ+ people remain free from discrimination in publicly funded programs. They believe that the right to exercise religion freely is fundamental, but that it does not include an unfettered license to cause harm. *Amici* also recognize and oppose the threat to religious freedom that would result if the Constitution were understood to require the state to subsidize religion-based discrimination.

The *amici* are:

- Americans United for Separation of Church and State.
- American Civil Liberties Union.
- ACLU of Colorado.
- Central Conference of American Rabbis.
- Interfaith Alliance.
- Interfaith Alliance of Colorado.
- Keshet.

---

[1] *Amici* affirm that no counsel for a party authored this brief in whole or in part and that no person other than *amici*, their members, or their counsel made a monetary contribution intended to fund the brief's preparation or submission. All parties have consented to the filing of this brief.

- Lambda Legal Defense and Education Fund, Inc.

- The Sikh Coalition.

- Union for Reform Judaism.

- Women of Reform Judaism.

2

## INTRODUCTION AND SUMMARY OF ARGUMENT

Colorado has enacted a Universal Preschool Program that uses a "mixed delivery system" for delivering preschool services through "a combination of school- and community-based preschool providers . . . funded by a combination of public and private money." Colo. Rev. Stat. § 26.5-4-203(12). Colorado has chosen to condition participation in the Preschool Program on compliance with an "equal opportunity" requirement that eligible children be permitted to enroll in the program and receive services regardless of certain characteristics, including sexual orientation and gender identity. *Id.* § 26.5-4-205(2)(b). This guarantees that LGBTQ+ children and families do not suffer the stigma and degradation associated with discrimination when they seek to participate in the Program.

In a nation defined by its religious pluralism, the many and varied beliefs among our people make it inevitable that secular laws—such as the Preschool Program's equal-opportunity requirement—will at times offend some people's religious sensibilities. But while religion and religious practices may not be specially disfavored, there is no Free Exercise Clause violation when a governmental body conditions a public benefit on a religion-neutral and generally applicable requirement. The plaintiff religious schools are merely being asked to follow the same

antidiscrimination rules that apply to every other school in the Program—rules that are grounded in secular, not religious, concerns. Nothing about these rules offends the guarantee of free religious exercise or runs afoul of the Supreme Court's recent case law involving grant programs that expressly excluded religious schools.

Plaintiffs' contention that a governmental body cannot condition public funding on compliance with a religion-neutral requirement that has the effect of burdening religious practice effectively asks this Court to ignore longstanding Supreme Court precedent that religion-neutral and generally applicable rules do not violate the Free Exercise Clause. Plaintiffs erroneously attempt to paint the Preschool Program's prohibitions against sexual-orientation and gender-identity discrimination as non-neutral by relying on alleged exemptions from prohibitions on *other* kinds of discrimination. And even if the Court were to accept Plaintiffs' meritless arguments and conclude that the prohibitions at issue should be subjected to strict scrutiny, they meet that scrutiny because they are narrowly tailored to the state's compelling interest in protecting LGBTQ+ people from discrimination.[2]

---

[2] While this brief is limited to refuting Plaintiffs' Free Exercise Clause arguments, *amici* agree with Colorado that it has not violated Plaintiffs' expressive-association rights.

## ARGUMENT

### I. Conditioning a public benefit on compliance with a religion-neutral law does not violate the Free Exercise Clause.

Religious freedom is a value of the highest order. But the constitutional guarantee of religious freedom is not an entitlement to "general immunity from secular laws." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). Under *Employment Division v. Smith*, 494 U.S. 872 (1990), laws that apply generally and are neutral with respect to religion do not trigger heightened scrutiny under the Free Exercise Clause, even if they "ha[ve] the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (citing *Smith*); *accord Fulton v. City of Philadelphia*, 593 U.S. 522, 543 (2021) (Barrett, J., concurring) ("[The Supreme] Court [has] held that a neutral and generally applicable law typically does not violate the Free Exercise Clause—no matter how severely that law burdens religious exercise.").

A contrary rule would "make the professed doctrines of religious belief superior to the law of the land, and in effect . . . permit every citizen to become a law unto himself." *Smith*, 494 U.S. at 879 (quoting *Reynolds v. United States*, 98 U.S. 145, 166–67 (1878)). "[G]overnment simply could not operate if it were required to satisfy every citizen's religious needs and

5

desires." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452 (1988). As this Court stated in *Swanson v. Guthrie Independent School District No. I-L*, 135 F.3d 694, 702 (10th Cir. 1998), "[n]othing in the Free Exercise Clause requires that . . . special treatment [from the government] be provided."

Yet Plaintiffs seek exactly that. They contend (Appellants' Br. 20–22), that the Preschool Program's equal-opportunity requirement burdens their religious exercise and therefore—notwithstanding *Smith*—triggers strict scrutiny under *Carson ex rel. O.C. v. Makin*, 596 U.S. 767 (2022). They are wrong.

In *Carson*, the Supreme Court concluded that a Maine tuition-funding program that allowed only "nonsectarian" schools to receive payments violated the Free Exercise Clause. *Id.* at 789. The Court applied strict scrutiny and held the program unconstitutional because it excluded schools from participating "solely because of their religious character." *Id.* at 780 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017)); *see also Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 475 (2020).

The Preschool Program here does not exclude any schools based on their religious nature. Schools are excluded—regardless of whether they are religious or secular—only if they refuse to follow religion-neutral and

6

generally applicable rules, such as the equal-opportunity requirement. This case is therefore controlled by *Smith*, not *Carson*. As the Fourth Circuit recently affirmed in *Kim v. Board of Education*, 93 F.4th 733, 748 (4th Cir. 2024), *Carson* and similar cases "stand only for the point that religious schools cannot be excluded from grant programs solely because of their religious character."

To be sure, *Carson* held that a denial of funding based on a school's proposed use of the funding for religious education constitutes a denial based on religious character and triggers strict scrutiny. *See* 596 U.S. at 786–89. But that result is fully consistent with the rule of *Smith*—denying funding based on the applicant's intent to use the funds for religious activity triggers strict scrutiny because it treats religion differently from nonreligion. By contrast, the antidiscrimination rule here applies equally to religious and nonreligious organizations—and to religiously and secularly motivated discrimination—and so it does not trigger strict scrutiny.

Plaintiffs contend that *Carson* relied on *Sherbert v. Verner*, 374 U.S. 398 (1963), and that *Sherbert* stands for a separate rule that survived *Smith*: that "conditioning 'a benefit or privilege' on a person's 'willingness to violate' her faith triggers strict scrutiny." (Appellants' Br. 21 (quoting *Sherbert*, 374 U.S. at 404, 406).) But *Smith* expressly cabined *Sherbert* to

7

situations involving "individualized governmental assessment of the reasons for the relevant conduct" and otherwise overruled it. *See Smith*, 494 U.S. at 884; *Holt v. Hobbs*, 574 U.S. 352, 357 (2015) ("*Smith* largely repudiated the method of analysis used in . . . *Sherbert*"); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295 (10th Cir. 2004) (describing *Sherbert* as the "individualized exemption" exception to *Smith*).

Plaintiffs are effectively asking this Court to disregard and overrule *Smith*. If *Smith* does not apply when a party contends that compliance with the law to which the party objects would cause the party to violate its faith, then little—if anything at all—would be left of *Smith*. Of course, "[o]nly the Supreme Court can overrule its own precedents." *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 1035 (2024). And the Supreme Court has repeatedly refused to overrule *Smith*, including recently in *Fulton*, 593 U.S. at 533.

To the extent that Plaintiffs contend that their arguments only apply to situations involving conditions on state funding, they seek to create a legal regime that would make absolutely no sense. Under that view of the law, antidiscrimination rules that burden religious exercise would trigger strict scrutiny when the entity that wishes to discriminate seeks public funds, but not when no public funding is involved. This would turn the law on its head. For "the Constitution does not permit the State to aid

8

discrimination" by private entities. *Norwood v. Harrison*, 413 U.S. 455, 465–66 (1973); *accord Gilmore v. City of Montgomery*, 417 U.S. 556, 568–69 (1974) ("any tangible state assistance . . . is constitutionally prohibited if it has 'a significant tendency to facilitate, reinforce, and support private discrimination'" (quoting *Norwood*, 413 U.S. at 466)); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961) (by leasing property to discriminatory entity, city unconstitutionally "place[d] its power, property and prestige behind the admitted discrimination").

What is more, the practical implications of Plaintiffs' view of the law are quite disturbing. To take one example, under the legal principles that Plaintiffs advocate, a religious school receiving public funding could disregard a regulation requiring all children to be provided lunches during school days if the school's religious beliefs required complete or partial fasting. *See, e.g.*, *Daniel* 1:12 ("Please test your servants for ten days: Give us nothing but vegetables to eat and water to drink."). This Court should not adopt a legal rule that would give religious groups *carte blanche* to take public funds while ignoring any antidiscrimination, health, and safety rules that conflict with their religious beliefs.

## II. Exemptions from prohibitions other than the challenged ones do not trigger strict scrutiny under the Free Exercise Clause.

In assessing whether a law or regulation is neutral and generally applicable under *Smith*, courts consider whether the government "in pursuit of legitimate interests, [has] in a selective manner impose[d] burdens only on conduct motivated by religious belief." *Lukumi*, 508 U.S. at 543. Government thus may not burden religious conduct while affording more favorable treatment to nonreligious conduct that is as detrimental to the underlying state interests. *See Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam). "[W]hether two activities are comparable for the purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* The Preschool Program's prohibition against sexual-orientation and gender-identity discrimination complies with these principles.

### A. Plaintiffs wrongly rely on alleged exemptions to prohibitions other than the ones against sexual-orientation and gender-identity discrimination.

Plaintiffs allege that Colorado allows providers to prefer applicants based on income, disability, race, sexual orientation, gender identity, and religious affiliation. (*See* 2.App.0507–08.[3]) But the district court made

---

[3] "N.App.NNNN" citations are to Appellants' Appendix and indicate first the volume and then the page number.

factual findings that the alleged exceptions for income, disability, race, sexual orientation, and gender identity do not exist. (2.App.0510–13.) These factual findings were not clearly erroneous (*see* Appellees' Br. 30–38) and are due deference on appeal (*see, e.g., United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010)).

The district court further found, in the alternative, that even if certain Program features (for example, specific programs for children with disabilities) could properly be viewed as exemptions from prohibitions other than the ones against sexual-orientation and gender-identity discrimination, no such exemption undermined Colorado's specific governmental interests in preventing those particular types of discrimination. (2.App.0514.) The district court's analysis acknowledged the undeniable truth that "all discrimination is not the same," and that although Colorado may consider each component of the equal-opportunity requirement to be equally important, the *reasons* that each component is important can and do differ substantially. *See* 2.App.0508–09 ("[T]here was significant testimony in this case on the specific barriers LGBTQ+ children and families face in obtaining preschool services. These circumstances would differ for barriers based on religious affiliation, disability, sex, or race."); *see also Emilee Carpenter, LLC v. James*, 107 F.4th 92, 111 (2d Cir. 2024) ("New York's interests in prohibiting

11

discrimination on different protected grounds are not identical, as unique policy and legal considerations underlie how the public accommodations laws deal with discrimination against members of different protected groups.").

The district court's approach was correct. The alleged exceptions to prohibitions against discrimination on grounds different from sexual orientation and gender identity do not and cannot undermine Colorado's interests in preventing sexual-orientation and gender-identity discrimination in publicly funded educational programs. The pertinent legal question is whether the *challenged* prohibitions are neutral and generally applicable, not whether some *other* prohibition falls short.

For example, the Supreme Court held in *Hernandez v. Commissioner*, 490 U.S. 680, 700 (1989), that the Free Exercise Clause did not entitle a religious group's members to an exemption from taxation of income paid for spiritual-training sessions. The Court explained that the tax code contains a general prohibition against deducting from income money paid to nonprofits—secular or religious—in exchange for services. *See id.* at 689–90, 699–700. It made no difference to the Court that *other* provisions of the tax code allow taxpayers to deduct charitable contributions to nonprofits when the taxpayer receives nothing in return. *See id.* at 683–84, 689–90, 699–700.

Likewise, in *Smith*, 494 U.S. at 874, 890, the Supreme Court held that Oregon's general criminal prohibition against use of the mind-altering drug peyote could be constitutionally applied to people who use peyote as a religious sacrament. The Court concluded that the Oregon law was neutral and generally applicable, as it prohibited both religious and nonreligious uses of peyote. *See id.* at 874, 879–80. It did not matter to the Court that Oregon state law as a whole did not prohibit the use of another mind-altering substance—alcohol.

And in *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649–55 (10th Cir. 2006), this Court concluded that a zoning ordinance's prohibition against daycare centers in a residential area was neutral and generally applicable. The Court so held even though the ordinance "allow[ed] for limited objective exceptions in the [residential] zone (such as churches, schools, and other similar uses)." *Id.* at 654. The Court emphasized that "the regulation bars any organization or individual from operating a daycare center in this residential zone, for either secular or religious reasons." *Id.*; *see also Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) ("[N]either the Supreme Court . . . nor any other court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.'").

13

In arguing that the Court should consider alleged exceptions to prohibitions other than the ones on sexual-orientation and gender-identity discrimination, Plaintiffs principally rely (Appellants' Br. 28–32) on *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 (9th Cir. 2023) (en banc). But to the extent that *Fellowship* considered exceptions to antidiscrimination prohibitions different from the ones that were at issue there, its approach was inconsistent with the precedents of the Supreme Court and this Court. *Cf. id.* at 729 (Murguia, C.J., dissenting) (criticizing the "flawed" nature of the majority's *Tandon* analysis). In any event, the only state interest acknowledged by the court in *Fellowship* was "ensuring equal access for all students to all programs." *Id.* at 689. Unlike in *Fellowship*, here—as the district court found—Colorado demonstrated interests supporting its prohibitions against sexual-orientation and gender-identity discrimination that are specific and distinct from Colorado's interests in barring other types of discrimination. (*See* 2.App.0508–09.)

## B. Plaintiffs' reliance on the Preschool Program's "congregation preference" is doubly misguided.

The district court found that the Preschool Program's prohibition against religious discrimination contains a "congregation preference" exemption that "permits faith-based providers to reserve for members of

14

their church community all or a portion of the seats for which they are licensed." (2.App.0460, 0514–17.) As explained above, the congregation preference does not support Plaintiffs' arguments because it is not an exemption from the prohibitions against sexual-orientation and gender-identity discrimination.

The congregation preference is irrelevant for another reason as well: It favors religious organizations instead of disfavoring them. *Tandon* held that a law may fail the requirements of neutrality and general applicability if it treats "comparable secular activity *more* favorably than religious exercise." *See* 593 U.S. at 62 (emphasis added). But here, the congregation preference is available only to religious providers, so it cannot favor secular activity and does not trigger strict scrutiny. *See Roman Cath. Diocese of Albany v. Vullo*, 42 N.Y.3d 213, 2024 WL 2278222, at *11 (N.Y. 2024) (rejecting the argument that an exemption for religious entities triggers strict scrutiny under *Tandon*), *petition for cert. docketed*, No. 24-319 (Sept. 20, 2024); *Cath. Charities of Sacramento, Inc. v. Superior Ct.*, 85 P.3d 67, 83 (Cal. 2004) (rejecting contention that a religious exemption rendered a statute non-neutral for Free Exercise Clause purposes, and noting that the Supreme Court "has never prohibited statutory references to religion for the purpose of accommodating religious practice.").

15

What is more, if the presence of a religious exemption in an antidiscrimination statute could subject all the prohibitions in the statute to strict scrutiny—as suggested by Plaintiffs' view of the law—then numerous antidiscrimination statutes could become wholly unenforceable against religious organizations. Many antidiscrimination statutes have religious exemptions, but these exemptions are typically limited in scope and only allow religious organizations to give preferences to people of their own religion. *See, e.g.*, 42 U.S.C. § 2000e-1(a) (Title VII exemption); 42 U.S.C. § 3607(a) (Fair Housing Act exemption); 42 U.S.C. § 12113(d) (Americans With Disabilities Act employment-discrimination exemption). Accepting Plaintiffs' arguments would mean that these religious exemptions would subject all other prohibitions in these statutes to strict scrutiny. This would upend existing caselaw and subvert legislative intent to allow certain kinds of exemptions but not others. For example, courts have rejected arguments that the exemption in Title VII that allows religious organizations to prefer members of their own faith in hiring can properly be construed to permit discrimination on other grounds. *See, e.g.*, *EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1365–66 (9th Cir. 1986); *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1166–67 (4th Cir. 1985). Indeed, if religious exemptions were to result in other kinds of discrimination being allowed, that could discourage legislators

16

from including religious exemptions in statutes at all. *See Cath. Charities of Diocese of Albany v. Serio*, 859 N.E.2d 459, 469 (N.Y. 2006).

### III. Even if strict scrutiny applies, the equal-opportunity requirement satisfies it.

Even if this Court were to accept Plaintiffs' radical arguments and conclude that strict scrutiny applies, the Preschool Program's equal-opportunity requirement would satisfy that scrutiny. In applying strict scrutiny, a court must determine whether the challenged law is "justified by a compelling state interest and . . . narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). The Preschool Program's prohibitions against sexual-orientation and gender-identity discrimination meet both components of this test.

#### A. The equal-opportunity requirement serves compelling governmental interests.

The Program's bar against these types of discrimination serves compelling governmental interests. The Supreme Court explained in *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984), that "eliminating discrimination and assuring . . . citizens equal access to publicly available goods and services . . . plainly serves compelling state interests of the highest order." Similarly, in *Fulton*, the Court recognized that the government's interest in preventing sexual-orientation discrimination "is a weighty one, for '[o]ur society has come to the recognition that gay persons

and gay couples cannot be treated as social outcasts or as inferior in dignity and worth.'" 593 U.S. at 542 (quoting *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 631 (2018)). To be sure, the Court ultimately concluded in *Fulton* that a city did not have a compelling interest in denying a foster-care agency a religious exemption from an antidiscrimination rule in a city contract, because the contract permitted secular exemptions from the same rule on a discretionary basis. *See id.* at 539–42. But Colorado's Preschool Program does not permit any exemptions from its ban on sexual-orientation and gender-identity discrimination.

The state's interest in preventing these types of discrimination is particularly weighty in the context of publicly funded education. The state has an especially compelling interest in prohibiting discrimination in publicly funded programs because, as noted above, the Constitution actually bars it from aiding discriminatory practices. *See Norwood*, 413 U.S. at 465–66; *Gilmore*, 417 U.S. at 568–69; *Burton*, 365 U.S. at 725. And "[g]overnment has few interests more compelling than its interest in [e]nsuring that children receive an adequate education," as "[e]ducation provides the basic tools by which individuals might lead economically productive lives to the benefit of us all." *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1205 (10th Cir. 2002)

18

(quoting *Rothner v. City of Chicago*, 929 F.2d 297, 303 (7th Cir. 1991)). "Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms." *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954); *see also Plyler v. Doe*, 457 U.S. 202, 221–22 (1982) ("[D]enial of education to some isolated group of children poses an affront to one of the goals of the Equal Protection Clause: the abolition of governmental barriers presenting unreasonable obstacles to advancement on the basis of individual merit."); *Petrella v. Brownback*, 787 F.3d 1242, 1266–67 (10th Cir. 2015) (recognizing the government's interest in equity in education funding). Preventing discrimination in education exposes students to classmates with diverse identities, ideas, and backgrounds, enabling them to better engage in our diverse society and build empathy and understanding for those with different experiences and histories than their own.

**B. The equal-opportunity requirement is narrowly tailored.**

The equal-opportunity requirement is narrowly tailored to the state's compelling interest in preventing sexual-orientation and gender-identity discrimination. For ensuring equal access and prohibiting the discrimination sought to be eradicated "abridges no more [activity] than is necessary to accomplish that purpose." *See Roberts*, 468 U.S. at 628–29; *accord EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560,

19

594 (6th Cir. 2018) ("[E]nforcing Title VII is itself the least restrictive way to further EEOC's interest in eradicating discrimination based on sex stereotypes from the workplace."), *aff'd sub nom. Bostock v. Clayton County*, 590 U.S. 644 (2020).

A government body need not adopt an alternative means proposed by a party if the alternative would "not be as effective" in achieving the relevant state interest. *See Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004). And Plaintiffs here do not even propose any alternative that would further Colorado's antidiscrimination interests at all. (*See* Appellants' Br. 46–47.) Plaintiffs' suggestion that Colorado could include "a disclaimer for Plaintiff Preschools in the [Program] portal" (2.App.0526) is just another way of asserting a right to discriminate. *See* Joseph William Singer, *Subprime: Why a Free and Democratic Society Needs Law*, 47 Harv. C.R.-C.L. L. Rev. 141, 155 (2012) ("Allowing restaurants to proclaim their disinclination to serve customers because of race would perpetuate segregated eating establishments and allow racial segregation in the marketplace to persist."). Moreover, if any preschool is allowed to opt out of the equal-opportunity requirement as long as the school has a religious justification, there is no guarantee that another preschool to which a family is referred will not do the same. Allowing preschools to refuse on religious grounds to serve LGBTQ+ children and families could result in

20

no schools in the Preschool Program being open and accessible to them, at least within a reasonable distance from their home.

And even if other reasonably located preschools in the Program would be willing and able to accept these families, telling a person suffering the pain and humiliation of discrimination to "just go someplace else" is no remedy for the grave stigmatic harms that discrimination inflicts. "Discrimination is not simply dollars and cents, hamburgers and movies; it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public[.]" *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 292 (1964) (Goldberg, J., concurring). Equal-opportunity requirements "vindicate 'the deprivation of personal dignity that surely accompanies denials of equal access to'" publicly funded programs. *See id.* at 250 (majority opinion) (quoting S. Rep. No. 88-872, at 16–17 (1964)).

Plaintiffs' argument also ignores the many LGBTQ+ Catholic families who affirmatively desire a Catholic preschool education for their children. For example, two Catholic parents who cumulatively spent thirty-five years in Catholic education wrote movingly about why they are seeking for their child a Catholic education that accepts LGBTQ+ families:

> Our hope is that . . . every child and every family who wishes to participate in Catholic education, whether they align fully with church teaching or not, could be welcomed by the Church

with a loving embrace . . . . Because we both had safe, loving experiences in our Catholic schools, we have desired the same for our children. Steeped in Catholic values over the course of our lives, we know we have the ability to cultivate those values in our home and simultaneously we want support from the faith community in a Catholic educational setting.

Beth Mueller Stewart, *Catholic Parents Ask Denver's Archbishop Aquila to Drop Anti-LGBTQ+ Lawsuit*, New Ways Ministry (May 21, 2024), https://bit.ly/40iHKrg.

Put simply, "acts of invidious discrimination in the distribution of publicly available goods [and] services . . . cause unique evils" (*see Roberts*, 468 U.S. at 628), which Colorado has chosen to avoid in creating a publicly funded universal preschool program with an equal-opportunity requirement. Accepting Plaintiffs' arguments would instead give official imprimatur to discrimination. It would deny LGBTQ+ children and families the fundamental American promise of equality for all and diminish their standing in society. The Constitution does not require government to impose such grave harms in the name of religious accommodation.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

22

Respectfully submitted,

| | s/ *Alex J. Luchenitser* |
|---|---|
| Timothy R. Macdonald | Alex J. Luchenitser |
| Sara R. Neel | Scott Lowder (appearing under 10th |
| Anna I. Kurtz | Cir. R. 46.7) |
| AMERICAN CIVIL LIBERTIES | AMERICANS UNITED FOR |
| UNION FOUNDATION OF | SEPARATION OF CHURCH AND |
| COLORADO | STATE |
| 303 E. 17th Ave., Suite 350 | 1310 L Street NW, Suite 200 |
| Denver, CO 80203 | Washington, DC 20005 |
| (720) 402-3137 | (202) 466-7306 |
| *tmacdonald@aclu-co.org* | *luchenitser@au.org* |
| *sneel@aclu-co.org* | *lowder@au.org* |
| *akurtz@aclu-co.org* | |
| | Karen L. Loewy |
| Daniel Mach | Kenneth D. Upton |
| AMERICAN CIVIL LIBERTIES | LAMBDA LEGAL DEFENSE AND |
| UNION FOUNDATION | EDUCATION FUND, INC. |
| 915 15th Street NW | 111 K Street NE, 7th floor |
| Washington, DC 20005 | Washington, DC 20002 |
| (202) 675-2330 | (202) 804-6245 |
| *dmach@aclu.org* | *kloewy@lambdalegal.org* |
| | *kupton@lambdalegal.org* |

*Counsel for* Amici Curiae

Date: October 23, 2024

23

## CERTIFICATIONS OF COUNSEL

1.  **Word Count.** This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Tenth Circuit R. 32(B), it contains 4,437 words.

2.  **Typeface/Type-style.** This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Tenth Circuit R. 32, and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared using Microsoft Word Office 16 in Century Schoolbook, a proportionally spaced font, in a size measuring 14 points or larger.

3.  **Privacy Redactions.** All privacy redactions have been made in compliance with Tenth Cir. R. 25.5.

4.  **Hard Copies.** This electronic filing is identical to the hard copies of the brief that will be submitted.

Date: October 23, 2024                    s/ *Alex J. Luchenitser*