No. 24-1267

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

St. Mary Catholic Parish in Littleton;
St. Bernadette Catholic Parish in Lakewood;
Daniel Sheley; Lisa Sheley;
The Archdiocese of Denver,

*Plaintiffs-Appellants,*

v.

Lisa Roy, In Her Official Capacity As Executive Director Of The
Colorado Department Of Early Childhood;
Dawn Odean, In Her Official Capacity As Director Of Colorado's
Universal Preschool Program,

*Defendants-Appellees.*

On Appeal from the United States District Court, District of Colorado
The Honorable John L. Kane
Senior District Judge

District Court Case No. 1:23-cv-02079-JLK

**APPELLEES' BRIEF OPPOSING ABATEMENT OF THIS MATTER
AND OPPOSING VACATING OF ORAL ARGUMENT**

PHILIP J. WEISER
Attorney General
HELEN NORTON*
Deputy Solicitor General
VIRGINIA R. CARRENO*
Second Assistant Attorney General
JANNA K. FISCHER*
Senior Assistant Attorney General II
*Counsel for Defendants-Appellees

1300 Broadway 10th Fl.
Denver, CO 80203
Tel.: (720) 508-6513
Tel.: (720) 508-6601
Tel.: (720) 508-6374
Email: helen.norton@coag.gov
Email: virginia.carreno@coag.gov
Email: janna.fischer@coag.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES................................................................ii

ARGUMENT ........................................................................................1

   I. *Drummond* turns on a state action question entirely absent
     from this matter.................................................................................3

   II. The Free Exercise Clause and Establishment Clause questions
      at issue in *Drummond* are unrelated to this matter.........................5

CONCLUSION ..................................................................................13

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMIT ...............................................................................................14

# TABLE OF AUTHORITIES

## CASES

*Carson v. Makin,*
  596 U.S. 767 (2022)................................................................. 7, 8, 9, 10

*Crosspoint Church v. Makin,*
  No. 1:23-cv-00146-JAW, 2024 WL 810033 (D. Me. Feb. 27,
  2024)......................................................................................11

*Drummond v. Okla. Statewide Virtual Charter Sch. Bd.,*
  558 P.3d 1 (Okla. 2024)..........................................................1, 4

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith,*
  494 U.S. 872 (1990)................................................................10

*Espinoza v. Mont. Dep't of Revenue,*
  591 U.S. 464 (2020).................................................................7, 8

*Kim v. Bd. of Educ. of Howard Cnty.,*
  93 F.4th 733 (4th Cir. 2024) .................................................. 10, 11

*Loffman v. Calif. Dep't of Educ.,*
  119 F.4th 1147 (9th Cir. 2024) ..................................................8

*Mendham Methodist Church v. Morris Cnty.,*
  No. 23cv2347 (EP) (JSA), 2024 WL 4903677 (D. N.J. Nov. 27,
  2024)......................................................................................9

*St. Dominic Acad. v. Makin,*
  No. 2:23-CV-00246-JAW, 2024 WL 3718386 (D. Me. Aug. 8,
  2024)......................................................................................11

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  582 U.S. 449 (2017).................................................................7, 8

**STATUTES**

Colo. Rev. Stat. § 26.5-4-202(1)(b) (2024) ...............................................6

Colo. Rev. Stat. § 26.5-4-205(2)(b) (2024) ...............................................2

**OTHER AUTHORITIES**

Brief in Opposition, *Okla. Statewide Charter Sch. Bd. v. Drummond,*
No. 24-394 (U.S. Dec. 9, 2024) ........................... 1, 2, 4, 5, 6, 11, 12, 13

Petition for Certiorari, *Okla. Statewide Charter Sch. Bd. v. Drummond,*
No. 24-394 (U.S. Sept. 9, 2024)...................... 1, 2, 3, 4, 5, 6, 11, 12, 13

# ARGUMENT

The key question pending before the U.S. Supreme Court in *Oklahoma Statewide Charter Sch. Bd v. Drummond* and *St. Isadore v. Drummond* is whether charter schools are state actors. Petition for Certiorari, *Okla. Statewide Charter Sch. Bd. v. Drummond*, No. 24-394, at i (U.S. Sept. 9, 2024) ("Petition"); Brief in Opposition, *Okla. Statewide Charter Sch. Bd. v. Drummond*, No. 24-394, at 23-33 (U.S. Dec. 9, 2024) ("BIO"); *Drummond v. Okla. Statewide Virtual Charter Sch. Bd.*, 558 P.3d 1, 9-15 (Okla. 2024) ("*Drummond I*"). The answer to that question then determines the First Amendment analysis in those cases: if charter schools are governmental entities or otherwise state actors, then they are governed by the Establishment Clause, which may require the exclusion of religious schools from the state's charter school program. But if charter schools are instead private entities and not state actors, then the Free Exercise Clause may require the inclusion of religious schools—along with other private schools—in the state's charter school program. Petition at 28-32; BIO at 32-33; *Drummond I,* 558 P.3d at 13-15.

In stark contrast, no party to this matter asserts that private preschools funded by Colorado's universal preschool program (UPK) are government entities or state actors of any sort and no party asserts that participating private preschools are constrained by anti-establishment principles—and all parties agree that if the state were to categorically exclude religious actors from the UPK program while permitting other private preschools to participate, that exclusion would trigger strict scrutiny for Free Exercise Clause purposes. But in this matter—entirely unlike *Drummond*—the parties instead vigorously disagree about whether UPK does or doesn't exclude religious providers when it requires all publicly-funded providers, regardless of their secular or religious character, to comply with the statute's equal-opportunity requirements. Opening Brief at 11-13, 20-24; Answer Brief at 15-18; *see also* Colo. Rev. Stat. § 26.5-4-205(2)(b).

More specifically, the parties in this matter disagree about whether the Free Exercise Clause requires the Department to exempt Plaintiffs from UPK's requirements that all publicly-funded providers— both secular and religious—ensure equal opportunity regardless of

students' sexual orientation, gender identity, and religious affiliation. Opening Brief at 20-36; Answer Brief at 15-19. But *Drummond* involves no request for an exemption of any type. Indeed, the Petitioner religious school in *Drummond* promised "to welcome 'any and all students,' including 'those of different faiths or no faith,'" and that "no student [would] be denied admission...on the basis of race, color, national origin, sex, sexual orientation, gender identity, gender expression, disability, age, proficiency in the English language, religious preference or lack thereof, income, aptitude, or academic ability." Petition at 8.

Because the questions at issue in *Drummond* are unrelated to those at issue in this appeal, this Court should not abate this matter or vacate oral argument.

### I. *Drummond* turns on a state action question entirely absent from this matter.

The first "question presented" in *Drummond* asks the U.S. Supreme Court to decide "[w]hether the academic and pedagogical choices of a privately owned and run school constitute state action simply because it contracts with the state to offer a free educational option for interested students." Petition at i. The answer to this

threshold state action then drives the relevant First Amendment rule to be applied in *Drummond:* on one hand, if charter schools are public schools or otherwise state actors (as the Oklahoma Attorney General argued and the Oklahoma Supreme Court agreed), then they are subject to the Establishment Clause. *Drummond I,* 558 P.3d at 1, 7, 13-15; BIO at 24-31. But if, on the other hand, charter schools are not government entities or otherwise state actors (as the state charter school board and the religious schools assert), then they are instead private entities protected by the Free Exercise Clause from the government's "categorical exclusion." Petition at 28-32, BIO at 32-34; *Drummond I*, 558 P.3d at 14-15.

In stark contrast, no party to this matter asserts that private preschools that receive UPK funding are state actors, nor does any party assert that participating private preschools are constrained by anti-establishment principles—and both parties agree that participating private preschools have free exercise rights.

4

The Supreme Court's disposition of the state action question in *Drummond* will thus have no relationship to the questions at issue in this matter.

## II. The Free Exercise Clause and Establishment Clause questions at issue in *Drummond* are unrelated to this matter.

The second "question presented" by *Drummond* asks "[w]hether a state violates the Free Exercise Clause by excluding privately-run religious schools from the state's charter school program solely because the schools are religious, or whether a state can justify such an exclusion by invoking anti-establishment interests that go further than the Establishment Clause requires." Petition at i.

Again, the parties in *Drummond* agree that the state has excluded religious schools from its charter school program precisely because of their religious character, while disagreeing about whether such exclusion is required by anti-establishment principles or instead forbidden by the Free Exercise Clause. *Id*. at 12-16; 28-31; BIO at 23-34. In contrast, the contested Free Exercise Clause issue in this matter is *whether* UPK excludes religious schools because of their religious status

or use.[1] Opening Brief at 4, 24-36; Answer Brief at 2, 18-43. Because this Free Exercise Clause question is entirely absent from *Drummond,* the Supreme Court's disposition of *Drummond* will have no bearing on this matter.

A brief summary of the parties' disagreement in this matter makes this clear. As the Colorado Department of Early Childhood (CDEC) asserts, Answer Brief at 15-18, the UPK program does not exclude religious providers and instead affirmatively welcomes those providers—as well as secular private providers and public preschool providers—through what is known as the "mixed-delivery" of publicly-funded preschool services. Colo. Rev. Stat. § 26.5-4-202(1)(b). Indeed, to encourage faith-based providers' participation from the outset, CDEC convened an interfaith working group made up of a diverse array of religious organizations that met regularly to gather faith-based providers' input and learn about their concerns. A041; 3.App.0727-29.

---

[1] The contested issues in this matter also include whether UPK's equal-opportunity requirements are—or are not—neutral and generally applicable for Free Exercise Clause purposes, and whether UPK's equal-opportunity requirements implicate Plaintiffs' expressive association rights. Here, too, neither issue is in play in *Drummond*.

More than 40 faith-based preschools currently participate in UPK, including six Catholic Charities preschools that are part of the Archdiocese of Denver. A043; 1.App.0135-36. UPK does not exclude religious preschools because they are religious, nor does it exclude religious preschools for providing religious instruction through the lens of any faith. A126; 4.App.0808-09.

Plaintiffs nevertheless claim they are "categorically" excluded from UPK, because they do not agree, for religious reasons, to comply with the equal-opportunity requirements that apply to all UPK providers regardless of their secular or religious character. Opening Brief at 20-24. To support this claim, Plaintiffs point to *Carson v. Makin*, 596 U.S. 767 (2022); *Espinoza v. Mont. Dep't of Revenue,* 591 U.S. 464 (2020); and *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017). Opening Brief at 20-24. But that trio of decisions identified only public-funding programs that "specifically carved out private religious schools from those eligible to receive such funds" as "categorically excluding" religion for Free Exercise Clause purposes. *See Carson,* 596 U.S. at 780. More specifically, in *Trinity*

7

*Lutheran,* the Supreme Court held that a state categorically excluded religious actors (thus triggering strict scrutiny for Free Exercise Clause purposes) when it barred religious entities, "solely because of their religious character" and for anti-establishment reasons, from its program providing public funding to upgrade nonprofit organizations' playground surfaces. 582 U.S. at 462-63. In the same vein, the Court held in *Espinoza* that a state categorically excluded religious entities (thus triggering strict scrutiny) when it barred religious schools, "solely because of the religious character of the schools" and for anti-establishment reasons, from its program providing tax credits to donors who sponsored student scholarships to private schools. 591 U.S. at 476.

Finally, in *Carson,* the Court held that a state categorically excluded religious entities for anti-establishment reasons (thus triggering strict scrutiny) by barring religious schools from its program providing tuition assistance to support families' attendance at private schools when those schools would put public funding towards "religious use" by providing instruction through the lens of a particular faith or that promoted a particular faith. 596 U.S. at 787-89; *see also Loffman v.*

8

*Calif. Dep't of Educ.*, 119 F.4th 1147, 1169 (9th Cir. 2024) (relying on *Carson* to find that a state categorically excluded religious entities—thus triggering strict scrutiny—when it funded disability services provided to children by private schools only so long as those schools were "nonsectarian"); *Mendham Methodist Church v. Morris Cnty.*, No. 23cv2347 (EP) (JSA), 2024 WL 4903677, at *7 (D. N.J. Nov. 27, 2024) (relying on *Carson* to find that a state categorically excluded religious actors—thus triggering strict scrutiny—when it denied historic preservation funds to two churches for anti-establishment reasons because those churches would have put the public funding towards religious "use" by repairing stained glass windows and a bell tower used in religious services).

But, as explained above, UPK does *not* exclude any religious preschools because of their religious status, nor does it exclude any religious preschools for using UPK funds to deliver religious instruction. A043; 1.App.0079, 0135-36. Instead, faith-based providers—including those that provide religious instruction through the lens of any faith—are welcome to, and do, participate in UPK.

9

As Plaintiffs themselves acknowledge, their sprawling reading of the *Carson* trilogy would treat a law prohibiting publicly-funded preschools from engaging in corporal punishment as categorically excluding any providers with religious beliefs that "to spare the rod is to spoil the child." Plaintiffs' Reply Brief at 6 n.3 (describing such a policy as categorically excluding religion and thus triggering strict scrutiny). Multiple courts have rejected such expansive readings of *Carson*.[2] In *Kim v. Bd. of Educ. of Howard Cnty.*, for instance, the Fourth Circuit explained that the decisions in the *Carson* trilogy "stand

---

[2] In so doing, these courts have recognized the difference between the Free Exercise Clause analysis of government's categorical exclusion of religious actors and the analysis for government action that incidentally burdens religious practice. As the Supreme Court has held, governmental actions that incidentally burden religious exercise receive only rational-basis review unless the challenger can prove that the government's action were not neutral or not generally applicable—in which case, strict scrutiny applies. *See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith,* 494 U.S. 872, 886 n.3, 890 (1990) (applying rational basis to, and upholding, state law denying unemployment compensation to claimants dismissed from their jobs for illegal drug use even though that incidentally burdened the religious exercise of claimants who used illegal drugs for religious purposes: the Court held the challengers were denied benefits not because they were religious, but instead because they had used illegal drugs).

only for the point that religious schools cannot be excluded from grant programs solely because of their religious character." 93 F.4th 733, 748-49 (4th Cir. 2024). The Fourth Circuit thus held that the government's exclusion of private-school students from participating in the selection process for the student members of a public school board did not categorically exclude religious actors because it applied to all private school students regardless of whether they attended religious or secular schools. *Id.*; *see also Crosspoint Church v. Makin*, No. 1:23-cv-00146-JAW, 2024 WL 810033, at *15-18 (D. Me. Feb. 27, 2024) (appeal pending) (holding that state's requirement that private schools receiving state funding ensure equal opportunity in enrollment did not categorically exclude religious actors because it applied to all private schools, both religious and secular); *St. Dominic Acad. v. Makin*, No. 2:23-CV-00246-JAW, 2024 WL 3718386, at *26 (D. Me. Aug. 8, 2024) (appeal pending) (same).

In any event, as the discussion above makes clear, the contested Free Exercise Clause issues in this matter are entirely distinct from those in *Drummond.*

The Establishment Clause question at issue in *Drummond* is also entirely absent from this matter. Not only does the UPK program affirmatively include religious preschools regardless of their religious character, but Colorado has never invoked anti-establishment interests to justify UPK's equal-opportunity requirements or any other feature of UPK. The Department instead identifies the interests underlying UPK's equal-opportunity provisions as 1) ensuring that each child has equal access, free from discriminatory barriers, to enroll in publicly-funded preschools; and 2) that, once enrolled, every child has an equal opportunity to receive publicly-funded preschool services that are safe, healthy, and free from discrimination. Answer Brief at 44-45. The Supreme Court's assessment of the strength of the asserted anti-establishment interests offered to justify the state's categorical exclusion of religious schools in *Drummond* will thus have no bearing on this case.

**CONCLUSION**

Because the Supreme Court's disposition of the issues in

*Drummond* will not affect the questions at issue in this matter, this

Court should not abate this matter or vacate oral argument.

PHILIP J. WEISER
Attorney General

/s/ *Helen Norton*
HELEN NORTON*
Deputy Solicitor General
VIRGINIA R. CARRENO*
Second Assistant Attorney General
JANNA K. FISCHER*
Senior Assistant Attorney General II
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6374
Email: helen.norton@coag.gov
Email: virginia.carreno@coag.gov
Email: janna.fischer@coag.gov
*Counsel of Record for Defendants-
   Appellees

13

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This brief complies with the type-volume limitation of this Court's briefing order because it contains 13 pages, excluding the parts exempted under Fed. R. App. P. 32(f) and Tenth Circuit R. 32(B).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Tenth Circuit R. 32 because it uses 14-point Century Schoolbook font, a proportionally spaced typeface.

Dated: February 24, 2025.

/s/ *Helen Norton*

HELEN NORTON*
Deputy Solicitor General
VIRGINIA R. CARRENO*
Second Assistant Attorney General
JANNA K. FISCHER*
Senior Assistant Attorney General II
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6374
Email: helen.norton@coag.gov
Email: virginia.carreno@coag.gov
Email: janna.fischer@coag.gov
*Counsel of Record for Defendants Appellees