

1919 Pennsylvania Ave. NW, Suite 400
Washington, D.C. 20006
202-955-0095 / 𝕏 *@becketfund*
www.becketfund.org

July 3, 2025

**VIA CM/ECF**

Christopher M. Wolpert
Clerk of Court
Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257

**Re:** *St. Mary Catholic Parish in Littleton v. Roy,* **No. 24-1267**
**Notice of Supplemental Authority**

*Mahmoud v. Taylor*, No. 24-297 (U.S. June 27, 2025) (attached as Exhibit A)

Dear Mr. Wolpert:

In *Mahmoud v. Taylor*, the Supreme Court held that a school board's refusal to provide opt-outs from gender and sexuality instruction violated parents' free exercise rights. Op.39-41. *Mahmoud* confirms that Colorado's UPK restrictions here both trigger and fail strict scrutiny.

In *Mahmoud*, the Court reiterated that "the government cannot 'condition' [the] 'availability'" of public benefits on recipients' abandoning "their religious exercise." *Id.* at 33 (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017)). The Court then explained that while *Smith*'s rule for neutral and generally applicable laws applies to free-exercise claims in "most circumstances," some free-exercise burdens "require[] us to proceed differently." Op.35-36. In particular, when educational benefits are conditioned on "parents' willingness to accept a burden" on their ability "'to direct the religious upbringing of their' children," the court "need not ask whether the law at issue is neutral or generally applicable before proceeding to strict scrutiny." Op.17-19, 33, 36 (quoting *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 486 (2020)).



That is this case. Colorado's UPK program is a public benefit, and it is conditioned on parents' willingness to give up sending their children to Catholic preschools. *See* Op.34 ("insulting and legally unsound" to relegate religious parents to "prohibitively expensive" alternatives). Thus, as first *Carson* and now *Mahmoud* make clear, "strict scrutiny is appropriate regardless of whether the policy is neutral and generally applicable." Op.36 n.14; *see* Br.20-22.

Having triggered strict scrutiny, the policy in *Mahmoud* failed it because the government "continue[d] to permit opt outs in a variety of other circumstances." Op.37-39. Importantly, the opt-outs the Court found comparable were all from "other programs"—not from the challenged storybooks. *See id*.

Here, Colorado tries to brush aside exceptions from other aspects of the Equal Opportunity Mandate besides sexual orientation and gender identity. But even if Colorado hadn't *also* contemplated exceptions from *those* aspects (it has, Br.26-27), *Mahmoud* shows that the undisputed exceptions here would undermine its asserted interest just like the other opt-outs in *Mahmoud*—both triggering strict scrutiny (even under *Smith*) and resolving that inquiry in Plaintiffs' favor. Br.25-28, 44.

Word Count: 350

                                        Respectfully submitted,

                                        /s/ Joseph C. Davis
                                        Eric C. Rassbach
                                        Mark L. Rienzi
                                        Joseph C. Davis
                                        Nicholas R. Reaves
                                        Jordan T. Varberg
                                        Amanda G. Dixon
                                        The Becket Fund for Religious Liberty
                                        1919 Pennsylvania Ave, N.W., Suite 400
                                        Washington, D.C. 20006
                                        (202) 955-0095
                                        nreaves@becketfund.org



*Counsel for Plaintiffs-Appellants*

cc: All counsel of record (by ECF notification)